RUSSELL & Co., SUCRS., S. EN C., demandante y apelante, *v.* MANUEL V. DOMENECH, en su carácter de Tesorero de Puerto Rico, demandado y apelado.

Núm. 7028.—*Sometido:* Abril 3, 1936. *Resuelto:* Mayo 27, 1936.

*R. Castro Fernández* y *J. López Baralt*, abogados de la apelante; *Hon. Procurador General B. Fernández García* y *R. Cordovés Arana*, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Allá por el mes de febrero de 1932, la demandante importó en esta Isla cierto aparato conocido con el nombre de "Gyrotiller", pagando al Tesoro de Puerto Rico una contribución del 2 por ciento sobre el precio o valor de dicho aparato de acuerdo con el artículo 62 de la Ley de Arbitrios de Puerto Rico (Ley núm. 85 de 1925, pág. 585), enmendada por la Ley núm. 17 de 1927 (pág. 459). Posteriormente el demandado clasificó el referido aparato como un tractor e impuso a la demandante una contribución adicional de un 13 por ciento sobre la cantidad de $22,462.84, precio de venta en Puerto Rico del aparato en cuestión. En resumen, unidas ambas contribuciones, la demandante satisfizo el 15 por ciento sobre el precio de venta que provee el inciso octavo del artículo 16 de la Ley de Rentas Internas de Puerto Rico, enmendada por la Ley núm. 83 de 1931 (pág. 505). La contribución, que ascendió a $3,562.69, incluyendo recargos e intereses, fué pagada bajo protesta por la demandante en 14 de julio de 1933.

En los meses de julio y agosto del mismo año, la demandante importó dos aparatos más, idénticos al primero, por

los cuales satisfizo la contribución prescrita en la disposición legal que acabamos de citar.

A base de estos hechos y alegando además que los aparatos importados habían sido ilegal, injusta y arbitrariamente clasificados por el demandado como tractores, inició Russell & Co., Sucrs., S. en C., la presente acción, solicitando la devolución de las sumas pagadas bajo protesta, que ascienden a la cantidad de $7,625.34, más intereses legales desde la radicación de la demanda.

A esta demanda formuló el demandado excepción previa sobre la base de que la misma no aduce hechos suficientes para constituir causa de acción alguna. El tribunal inferior declaró con lugar dicha excepción, y concedió a la demandante un término de diez días, que no utilizó, para enmendar sus alegaciones. La corte inferior, a petición del demandado, dictó sentencia declarando sin lugar la demanda, e imponiendo las costas a la parte perdidosa.

Se alega que la corte erró al decidir que el "Gyrotiller" es un vehículo de motor y al dictar sentencia definitiva declarando sin lugar la demanda, con imposición de costas a la demandante.

La cuestión planteada por la parte apelante se reduce a determinar si los aparatos descritos en la demanda están sujetos solamente al impuesto del 2 por ciento prescrito por el artículo 62 de la Ley de Arbitrios, según fué enmendado por la Ley núm. 17 de 1927, o si por el contrario están sujetos al impuesto prescrito por el inciso octavo del artículo 16 de la Ley de Rentas Internas de Puerto Rico, según fué enmendada por la Ley núm. 83 de 1931.

Alega la parte demandante que uno de los aparatos importados es un arado mecánico automático completo, que de una sola pasada rompe, remueve y pulveriza la tierra, prepara los bancos y los surcos y deja listo el terreno para la siembra; que tiene dos discos cilíndricos, atornillados a cada uno de los cuales giran seis cuchillas o lengüetas, rompiendo y removiendo la tierra a medida que se mueve el aparato

hacia adelante; que contiene además dos arados de tipo corriente para abrir los surcos; que dicho aparato lleva instalado un motor "Diesel" que imparte fuerza a los referidos discos y genera asimismo el movimiento; que tiene dos juegos de ruedas puentes a los lados y uno de acero en el centro de la parte delantera; que no tiene barras de tracción, ganchos o aparatos de remolque o volante de donde se pueda conectar una polea para trasmitir fuerza a otro cuerpo; que nunca ha sido usado o anunciado como tractor; que tiene un peso mayor al tractor más pesado y que marcha a una velocidad menor que los tractores; que los "embragues" (*clutches*) que gobiernan las ruedas son inadecuados para trasmitir toda la fuerza del motor a las ruedas, y que para los efectos de la aduana de los Estados Unidos este aparato está clasificado como un utensilio de labranza (*agricultural implement*).

Se importaron además otros dos aparatos de la misma clase, aunque con la diferencia de ser de un estilo mucho más liviano y de menor costo que el descrito.

La corte inferior, en una cuidadosa y razonada opinión, resolvió que aunque el aparato que se describe en la demanda no es estrictamente un tractor, por más que se parece mucho, puede considerarse como un vehículo de motor, sujeto al impuesto cobrado por el Tesorero, de acuerdo con el inciso octavo del artículo 16 de la ley antes citada, que literalmente dice así:

"*Vehículos de motor y lanchas y botes de motor:* Sobre todo vehículo de motor, incluyendo automóviles, autowagones, camiones, tractores, autos de arrastre, motocicletas (sea cual fuere el nombre con que se conocieren), chassis, motores, cajas, baterías, tubos interiores y neumáticos para los mismos, lanchas, tengan o no puestos los motores, motores para las mismas, incluyendo motores usados para la parte exterior, que se vendan, traspasen, fabriquen, usen o introduzcan en Puerto Rico, un impuesto de diez (10) por ciento sobre el precio de venta en Puerto Rico.; *Disponiéndose,* que sobre la venta, traspaso, fabricación, uso o introducción en Puerto Rico de vehículos de motor o lanchas y botes de motor descritos en esta sección, cuyo precio de

venta en Puerto Rico exceda de mil quinientos (1,500) dólares y no exceda de dos mil (2,000) dólares el impuesto será de doce y medio (12½) por ciento sobre el precio de venta, y sobre la venta, traspaso, fabricación, uso o introducción en Puerto Rico de vehículos de motor, automóviles y camiones descritos en esta sección, cuyo precio de venta en Puerto Rico excederá de dos mil (2,000) dólares, y sobre gomas sólidas para camiones y otros vehículos de motor que se vendan, usen, traspasen, fabriquen o introduzcan en Puerto Rico, el impuesto será de quince (15) por ciento sobre el precio de venta; *Disponiéndose, además,* que las personas no residentes en Puerto Rico que usen automóviles de su propiedad para fines exclusivamente personales, estarán exentas del pago del impuesto prescrito por esta Ley por el período que usen licencia especial del Comisionado del Interior. Al expirar este período y adquirir la licencia ordinaria de dicho Comisionado, o antes, si el automóvil es destinado a otros usos que los que aquí se consignan, pagarán los impuestos de rentas internas.''

De la opinión del tribunal inferior copiamos lo siguiente:

''Se entiende por tractor, una máquina que produce tracción. Esta definición, sin embargo, resulta muy lata, ya que así podría llamarse a un sinnúmero de aparatos enteramente distintos a los que generalmente conocemos por tractores. Un mecanismo cualquiera que tira de un objeto moviéndolo o arrastrándolo, sería, dentro de esa definición, un tractor. Y sabemos que no es así. El estudio que nos ofrece la Enciclopedia Universal Ilustrada, editada por Espassa-Calpe, tomo 63, páginas 232 y 233, en el referente 'atracción', contiene, a juicio nuestro, disquisiciones interesantes alrededor del aspecto que deseamos considerar, las que esclarecen en cierto modo las dificultades que surgen al prestar nuestra atención a este asunto.

''Entre ellas juzgamos de importancia las que a continuación transcribimos:

'' 'Unas veces los viajeros y las mercancías son transportados en el mismo carruaje en que va el motor, es decir, que aquél constituye una unidad que por sí sola basta a sus propias necesidades pues lleva en sí el elemento activo, constituído por el motor; el pasivo, formado por la carga y todos los elementos intermedios, como transmisiones, y los accesorios, como refrigeración, frenado, etc. A este grupo pertenecen los innumerables camiones. . . .

'' 'Otras veces el motor va en carruaje separado para él solo y las mercancías y pasajeros son transportados en carruaje aparte arrastrados, o remolcados por aquél. Este modo de efectuar los trans-

portes ha dado lugar a la creación de unos carruajes automotores especiales que reciben el nombre de tractores, en cuya construcción se atiende principalmente a disponer de un motor robusto y de velocidad apropiado al desarrollo 'de grandes esfuerzos. . .

" 'En el caso primeramente considerado, cuando el motor y la carga van en el mismo carruaje, no existe en realidad, esfuerzo de tracción propiamente dicho para poner la carga en movimiento, sino que el esfuerzo motor es empleado en comunicar a las ruedas del carruaje un movimiento de rotación que determina el avance de las mismas gracias al engrane recíproco entre desigualdades de la llanta y las de la vía o del propio terreno, es decir, que la marcha se efectúa por adherencia. El avance de las ruedas se trasmite a todo el carruaje al que están invariablemente unidas. Si la adherencia es insuficiente, las ruedas no avanzan; sólo giran alrededor de su eje, y, como vulgarmente se dice, patinan y el carruaje no se mueve. No existe, pues, en este caso un esfuerzo de tracción que sea trasmitido mediante algún órgano rígido o flexible a la carga para ponerla en movimiento; la locomoción o cambio de posición obedece a una combinación de esfuerzos de diferente naturaleza. Sin embargo, como estos carruajes automotores también suelen emplearse para el arrastre o remolque de otros carruajes, en cuyo caso ya interviene un esfuerzo peculiar de tracción, estudiaremos en este lugar su aplicación a los transportes, indicando al mismo tiempo la evolución sufrida, por el sistema general, hasta llegar a los tipos más corrientes en la actualidad.'

"Hemos creído oportuno insertar estos párrafos porque el demandante hace hincapié en el hecho de que el aparato en este caso no tiene barras de tracción, ganchos o pieza de remolque, indicando 'on ello que los arados que éste transporta forman juntamente con el mismo una unidad, llevando a un tiempo y en sí el elemento activ), constituído por el motor; el pasivo, formado por la carga y todos los elementos intermedios como transmisión y accesorios. No cabe duda que dicha razón ofrece fundados motivos para observar una diferencia entre esta clase de aparatos y aquellos que reciben el nombre de tractores. Empero, si bien es verdad que los arados y demás artefactos están adheridos al cuerpo principal, el esfuerzo del motor no es empleado, únicamente, como en los casos de los camiones y demás automotores que juntamente con la carga formen una unidad, en comunicar a las ruedas del carruaje un movimiento de rotación que determine el avance de las mismas gracias al engrane recíproco entre las desigualdades de la llanta y las del terreno, si que al con-

trario se ejerce también por el motor un esfuerzo de tracción parecido al del automotor llamado tractor, esto es, aunque formando parte del cuerpo principal, se arrastran por dicho aparato dos arados de tipo corriente y un mecanismo que la demandante llama 'discos cilíndricos.' El avance, pues, del carruaje, al igual que en los casos de tractores, no depende únicamente de la adherencia de la rueda al terreno por razón del peso del cuerpo o la masa del aparato, sino que existe además, y a pesar de ser toda una unidad, el esfuerzo de arrastre o de tracción, que necesariamente aumenta la adherencia tanto como si los arados estuvieran conectados al aparato por una barra de enganche. En otras palabras, éste es un aparato muy parecido al tractor, que como cuerpo separado arrastra el arado, sólo que aquí el objeto que se arrastra no va enganchado al automotor. En cuanto a lo que dice la demandante sobre el peso enorme del aparato, en la misma obra y página que citamos anteriormente se dice:

"'que las condiciones primordiales a que deberá satisfacer un carruaje tractor son: gran peso y motor muy potente.'

"Como se ve, el gran peso no es un hecho que diferencia el aparato de que conocemos, del que corrientemente se llama un tractor.

"Tampoco es razón para diferenciar dicho aparato de los tractores el que se le llame implemento de labranza (*agricultural implement*), porque si bien eso es así, entendemos que un tractor es, por las mismas razones, un *agricultural implement*.

"Sin embargo, como se entiende por tractores aquellos automotores que tan sólo cargan el motor, y que remolcan o tiran de objetos que están separados y que se conectan al mismo por una barra de tracción o de remolque, y toda vez que del conjunto de los hechos alegados por el demandante se desprende que un tractor es algo distinto al aparato objeto de esta reclamación, aunque se parezca mucho, creemos estar justificados en resolver este aspecto de la controversia en favor de la demandante.

"La corte cree oportuno no obstante expresar que, atendido el inciso 8 del artículo 16 de la Ley de Arbitrios, según enmendada por la ley número 83 de 1931, el aparato descrito, de no ser un tractor, como hemos resuelto que no lo es en atención a las alegaciones de la demanda, es de todos modos un 'vehículo de motor' y cae, necesariamente, dentro de los artículos abarcados por la ley; siendo este punto por consiguiente, el de mayor importancia. Verdad es que si en lo que se refiere a las consideraciones que dejamos expuestas hemos sostenido que el aparato objeto de este litigio se diferencia de aquellos

conocidos corrientemente con el nombre de tractores, no cabe afirmar ahora que dicho aparato está entre aquellos expresamente enumerados y específicamente mencionados en la ley. Pero también es cierto que dicho aparato se diferencia poco de lo que se entiende por 'tractor', y estando éste incluído en la ley de arbitrios como 'un vehículo de motor'' hay que llegar a la conclusión de que dicho aparato es asimismo un 'vehículo de motor', a menos que se pretenda mantener que lo que le da el carácter de vehículo de motor a un tractor es el hecho de no tener éste adheridos los arados u objetos que arrastra, formando una unidad, y que las circunstancias de que el aparato de motor que está bajo nuestra consideración camine más o menos despacio que los tractores, o tenga un mayor peso, o lleve 'discos cilíndricos' consigo y arados como parte de su cuerpo principal, le resten las cualidades que debe reunir para estar comprendido dentro de la significación que tiene y del concepto que envuelve la expresión 'vehículos de motor', según ésta se usa en las disposiciones contenidas en el inciso 8 de la sección 16 de la Ley antes citada.

''Por consiguiente, somos de opinión que, en la demanda se describe un aparato sobre el cual la Ley de Arbitrios impone una contribución.''

En la opinión que antecede se dice que el aparato que se describe en la demanda no es un tractor, porque carece de barras de tracción, ganchos o piezas de remolque, estando los discos cilíndricos y arados que arrastra adheridos al cuerpo principal del aparato. La corte inferior sutiliza para diferenciar entre este aparato y un tractor, haciendo constar, sin embargo, que ''si bien es verdad que los arados y demás artefactos están adheridos al cuerpo principal, el esfuerzo del motor no es empleado únicamente, como en los casos de los camiones y demás automotores que juntamente con la carga forman una unidad, en comunicar a las ruedas del carruaje un movimiento de rotación que determine el avance de las mismas gracias al engrane recíproco entre las desigualdades de la llanta y las del terreno, *si que al contrario se ejerce también por el motor un esfuerzo de tracción parecido al del automotor llamado tractor, esto es, aunque formando parte del cuerpo principal, se arrastran por dicho*

*aparato dos arados de tipo corriente y un mecanismo que la demandante llama 'discos cilíndricos'."*

Continúa diciendo el tribunal que "el avance del carruaje, al igual que en los casos de tractores, no depende únicamente de la adherencia de la rueda al terreno por razón del peso del cuerpo o la masa del aparato, sino que existen además, y a pesar de ser todo una unidad, el esfuerzo de arrastre o de tracción, que necesariamente aumenta la adherencia tanto como si los arados estuvieran conectados al aparato por una barra de enganche. Este aparato es muy parecido al tractor que como cuerpo separado arrastra el arado, por lo que aquí el objeto que se arrastra no va enganchado al automotor."

Claramente se ve que a juicio del tribunal inferior la única diferencia existente entre este aparato que ambas partes llaman "Gyrotillers" y un tractor, es que en el primero los cuerpos que se arrastran, o sean los discos cilíndricos y los dos arados corrientes están adheridos en lugar de ir enganchados al aparato.

Alega la parte apelada que de acuerdo con los hechos alegados en la demanda el aparato mencionado no es otra cosa que un tractor muy grande, sistema "Caterpillar", marca Gyrotiller, diferenciándose del tractor corriente en que incluye en su estructura el equipo completo de arados para la preparación del terreno destinado a la siembra de caña de azúcar. Arguye que desprendiéndosele este equipo queda un tractor corriente o auto de arrastre y que es natural que no tenga barra de tracción, ganchos o aparatos de remolque, porque el equipo para arar, o sean los discos cilíndricos o los arados van atornillados al aparato, sin que esto quiera decir que no se le puedan adherir otros objetos o cosas, como ocurre en Inglaterra, donde se usa el "Gyrotiller" para preparar el terreno que se dedica a la siembra de trigo que exige un sistema de discos que tiene que ser y es distinto.

Esta es una cuestión que ha sido laboriosamente argumentada por los abogados de las partes y por la juiciosa opi-

nión de la corte sentenciadora. Nos inclinamos a creer que el aparato que se describe en la demanda puede considerarse como un tractor, comprendido dentro de las disposiciones de la Ley de Rentas Internas aplicada por el Tesorero de Puerto Rico para el cobro del impuesto. El Diccionario de la Real Academia Española nos dice que ''tractor'' es una máquina que produce tracción; y ''tracción'', según el mismo diccionario, es la acción y efecto de tirar de alguna cosa para moverla o arrastrarla. De acuerdo con la Enciclopedia Británica, *traction* (del latín *trahere, to draw*) es el acto de tirar o arrastrar *(is the act of drawing or hauling)*.

Nos parece que el ''Gyrotiller'' o aparato que sirve de base a este pleito puede muy bien estar comprendido dentro de las anteriores definiciones.

De acuerdo con las alegaciones de la demanda, este ''Gyrotiller'' se ha fabricado para ser usado en la preparación y arado de la tierra. Así lo admite la parte apelada, arguyendo que esta circunstancia no le quita su naturaleza de tractor, ya que el mismo arrastra los dos juegos de cuchillas giratorias que se usan para trillar el terreno y los aperos suplementarios. Las cuchillas giratorias, los arados corrientes u otros aperos de índole distinta que se necesitan para efectuar el trabajo de preparación del terreno, son arrastrados por la máquina, para lo cual ésta tiene que desarrollar un esfuerzo de tracción a fin de poner en movimiento dichos aperos, utilizándose parte de la fuerza que desarrolla el motor.

Alega la parte apelante que para los efectos de la aduana de los Estados Unidos el aparato en cuestión está clasificado como un utensilio de labranza. Así lo sostiene el caso de *Richardson Co.* v. *U. S.* (1917), 8 Ct. Cust. App. 179, de cuyo ''syllabus'' extractamos lo siguiente:

''La corte puede tomar conocimiento judicial del progreso en los medios usados en las faenas agrícolas. Sabe judicialmente que los tractores pesados, de transportación lenta, están suplantando en gran parte al caballo como medio de propulsión en las fincas, y que estos

artefactos están construídos en tal forma que caminan con demasiada lentitud y que son demasiado pesados para transportar por las carreteras públicas modernas, siendo su construcción apropiada tan sólo para la transportación lenta y para trabajar en el campo en terreno más blando.

"El hecho de que los tractores agrícolas sean usados incidental o excepcionalmente para otros fines que los agrícolas, no basta para refutar su clasificación como implementos de labranza.

"El uso general conocido de los tractores agrícolas demuestra que son comercial y prácticamente necesarios para la agricultura; y siendo así, al usárseles principalmente para fines de labranza, debe, en razón, clasificárseles de implementos agrícolas."

Es de notarse que en el caso que antecede se llama tractores a ciertos aparatos utilizados para propósitos agrícolas y se dice que estos aparatos constituyen instrumentos de labranza, de acuerdo con las leyes de aduana. Sin embargo, el hecho de que los referidos aparatos, llamados tractores, hayan sido clasificados como utensilios agrícolas no los eximiría, si se introdujeran en Puerto Rico, de la contribución impuesta por el inciso octavo del artículo 16 de la Ley de Rentas Internas de Puerto Rico, según fué enmendado por la Ley No. 83 de 1931.

En el caso de *Colón* v. *Domenech,* 48 D.P.R. 852, se alegó que la agricultura debe ser protegida y que la ley se refiere a los tractores industriales y no a los dedicados a trabajos agrícolas que sirven para arrastrar los pesados arados modernos y otros aparatos agrícolas. En presencia de esta alegación dijo este tribunal:

"Esto no obstante, la ley ha impuesto contribución sobre los tractores sin distinguir entre industriales y agrícolas, como hace el apelante. Por disposición de la ley todos los tractores tienen que pagar contribuciones y nosotros no estamos autorizados para agregar a la ley palabras y excepciones que ella no contiene. Ésa es función de la Legislatura, la que puede excluir del impuesto los tractores que el apelante llama agrícolas, si lo cree conveniente."

Dadas las conclusiones a que hemos llegado en este caso, considerando como tractores los aparatos objeto de este liti-

gio, huelga discutir el error que se atribuye a la corte inferior al concluir que los referidos aparatos son vehículos de motor. De acuerdo con la Ley de Rentas Internas la expresión "vehículos de motor" incluye también tractores.

En cuanto al pronunciamiento sobre costas, nos inclinamos a respetar el criterio de la corte inferior en el uso de sus facultades discrecionales.

*Debe confirmarse.la sentencia apelada.*