CENTRAL AGUIRRE SUGAR Co., demandante y apelada, *v.* MANUEL V. DOMENECH, sustituído por R. SANCHO BONET, TESORERO DE PUERTO RICO, demandado y apelante.

Núm. 7421.—*Sometido:* Diciembre 20, 1938. *Resuelto:* Junio 21, 1939.

---

* NOTA: Véase el prefacio.

154

*Hon. Procurador General B. Fernández García, (R. Cordovés Arana, Ex-Procurador General Auxiliar, en el alegato) y R. García Cintrón, Procurador General Auxiliar,* abogados del apelante; *Hartzell, Kelley & Hartzell y R. O. Fernández,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

En una acción para recobrar contribuciones pagadas bajo protesta la corte de distrito declaró sin lugar una excepción previa a la demanda. Se señala esto como error. La excepción se basaba en falta de hechos suficientes para determinar una causa de acción. La cuestión aquí envuelta es si cierto arado o cultivador mecánico automático era un tractor dentro del significado de esa palabra, conforme la misma se usa en el inciso 8 del artículo 16 de la Ley de Rentas Internas (Ley núm. 85 de 1925, pág. 585), según fué enmendada en 1931 (Leyes de ese año, págs. 505 y 509).

La demandante alegó:

"Que en el mes de julio, 1933, la demandante importó un arado mecánico automático completo (Fowler Gyrotiller No. 19,606). El Fowler Gyrotiller es un arado que de una sola pasada, rompe, remueve, pulveriza la tierra, prepara los bancos y los surcos, y deja listo el terreno para la siembra, y no puede ser usado nada más que para cultivar la tierra. Este aparato o utensilio de labranza está compuesto de dos discos cilíndricos donde van atornilladas varias cuchillas o lengüetas a cada disco, los cuales discos dan vueltas a la derecha según todo el aparato en general se mueve lentamente hacia adelante, rompiendo, removiendo y pulverizando la tierra; tiene dos arados de forma corriente para preparar los surcos y los bancos necesarios para la siembra de caña. Dicho aparato o utensilio de labranza contiene además un motor Diesel, que desarrolla fuerza, *el 90% de la*

*cual se transmite directamente a los mencionados discos giratorios cultivadores (rotary tillers) y el restante 10% de fuerza es usado para propulsar lentamente el aparato.* Pesa el mencionado aparato unas 22 toneladas, o sea, más del doble del peso del tractor más pesado que se ha fabricado; cuesta cuatro veces más que el tractor más costoso, camina a una velocidad mínima de media milla por hora, siendo la velocidad mínima de un tractor la de dos millas por hora. Para evitar que dicho utensilio de labranza se atolle o atasque, el mismo está montado en dos juegos laterales de ruedas-puentes y una de acero, situada en el centro de la parte delantera del aparato, todas con ancha superficie para poder sostener su peso, *pero sin layas, agarraderas o pontones como los que tienen los tractores para evitar el patinaje* ...; nunca ha sido usado y anunciado como tractor, ni puede ser usado como tal; *los embragues (clutches) que gobiernan las ruedas son inadecuados para trasmitir toda la fuerza del motor a las ruedas* ... "

Evidentemente, este utensilio es esencialmente un arado giratorio. De la descripción que acabamos de citar, puede hacerse la inferencia lógica de que el rompimiento, y en gran parte, la pulverización del terreno—verdadera labor de un arado—es hecha por los cultivadores giratorios. El terreno, luego de haber sido partido y parcialmente pulverizado por los cultivadores giratorios, es puesto en surcos y en bancos preparados entre los surcos en una sola operación por los dos "arados corrientes." Podría admitirse que estos "arados corrientes"—con lo que se quiere significar, según entendemos, las antiguas rejas de arado (*plowshare and moldboard*)—son movidos o arrastrados por el aparato de que forman parte. Tan sólo el 10 por ciento de la fuerza desarrollada por el motor Diesel es requerida o utilizable para fines de locomoción y—dado el peso del aparato mismo—únicamente una parte insignificante de ese 10 por ciento es utilizada para halar o arrastrar los arados corrientes. El noventa por ciento del total de la fuerza motriz desarrollada por este aparato se transmite directamente a los cultivadores giratorios, los cuales no son halados ni arrastrados por dicha máquina ni giran o funcionan por el movimiento hacia adelante o hacia atrás del aparato. Los embragues que gobiernan las

ruedas son inadecuados para transmitir toda la fuerza del motor a ellas. Las ruedas o puentes en que está montado este utensilio no están equipados con layas, agarraderas o pontones para adherirse al terreno y crear la fricción adhesiva de que la tracción depende. Evidentemente este aparato no fué diseñado o fabricado para arrastrar pesadas cargas o cargas de alguna magnitud, excepción hecha de su propio peso. Por el contrario, fué diseñado y usado primordialmente para hacer mover los discos giratorios, no por tracción, sino por aplicación directa de fuerza mientras la máquina está en movimiento. Si se tratara de un caso de primera impresión, muy bien podríamos vacilar antes de clasificar tal aparato como un tractor.

Por otra parte, cuando se dedican los tractores a trabajo estacionario, mucha de su fuerza es utilizada para mover otras maquinarias. Si un aparato automático que pesa 22 toneladas y que depende para su locomoción del mecanismo usado por tractores—que está en realidad montado en "dos juegos laterales de ruedas-puentes"—puede ser clasificado de tractor, es por lo menos una cuestión debatible. Así, pues, entre las palabras nuevas que figuran en *Webster's New International Dictionary* se define un "tank" en la siguiente forma:

"Una especie de máquina de propulsión propia que consiste de una armadura de pesado acero blindado montada en un *tractor* (especialmente del tipo Caterpillar) . . ." (Bastardilla nuestra.)

De suerte, pues, que podría muy bien argumentarse que cualquier mecanismo pesado de impulsión propia que se mueve con lentitud y que está "montado en un tractor" es para todo fin práctico un tractor. La mera ausencia de layas, agarraderas o pontones puede quedar compensada y tal vez explicada por el peso excesivo de la máquina en comparación con los tractores de uso corriente. Sea ello como fuere, la cuestión no es nueva para este tribunal. La demanda en el presente caso no puede ser distinguida de la demanda presentada en el caso de *Russell & Co.* v. *Domenech*, 50 D.P.R.

52, en el que este tribunal decidió que un "Gyrotiller", que no difiere en ningún detalle importante del aparato envuelto en este caso, era un tractor dentro del significado de esa palabra, tal cual la misma es usada en el inciso 8 del artículo 16, supra. Ese caso fué confirmado en *Russell & Co.* v. *Sancho Bonet*, 92 Fed. (2d) 821, donde la Corte de Circuito de Apelaciones dijo:

"Esta Corte no está en condiciones de decir que el Tribunal Supremo de Puerto Rico estuvo claramente equivocado al decidir y resolver que el aparato descrito en la demanda era un tractor y como tal sujeto al pago de la contribución fijada por el artículo 16, inciso 8 de la Ley de Rentas Internas de Puerto Rico, núm. 85 de 1925, según fué enmendada por el inciso 8 del artículo 16 de la Ley núm. 83 de 1931."

La apelada insiste en que en el presente caso cualquier falta de hechos en la demanda quedó suplida por la prueba. Hemos examinado la evidencia. Tiende a aclarar y a dar énfasis a la importancia de las alegaciones contenidas en la demanda. Fuera de esto agrega muy poco o nada a esas alegaciones, según han sido interpretadas por nosotros. En lo que a la cuestión ya discutida se refiere, no hallamos diferencia apreciable alguna entre los hechos expuestos en la demanda y los establecidos durante el juicio.

*Bajo la autoridad del caso de Russell, supra, la sentencia apelada debe ser revocada y declararse sin lugar la demanda.*

Los Jueces Sres. Presidente Del Toro y Asociado De Jesús no intervinieron.